UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | | |
|---|---|---|
| LARRY STOLZ, as Personal Representative of the Estate of Edna Wenzel, and JEAN ANDAL, on her own behalf, | ) ) ) ) | CIV. 10-4047-KES |
| Plaintiffs, | ) ) ) | |
| vs. | ) ) | ORDER DENYING DEFENDANTS' MOTIONS TO BIFURCATE AND TO SEVER |
| ABILITY INSURANCE COMPANY, f/k/a Medico Life Insurance Company; ABILITY RESOURCES, INC.; ABILITY REINSURANCE HOLDINGS LIMITED, a Bermuda Limited Company; ABILITY REINSURANCE LIMITED, a Bermuda Limited Company; and MEDICO INSURANCE COMPANY, | ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

Defendants, Ability Insurance Company, Ability Resources, Inc., Ability Reinsurance Holdings Limited, Ability Reinsurance Limited, and Medico Insurance Company (Ability), move to bifurcate the breach of contract claim from the bad faith insurance claim (Docket 47) and to sever plaintiffs Larry Stolz, personal representative of the Estate of Edna Wenzel, and Jean Andal (Docket 50). Plaintiffs resist both motions.

## BACKGROUND

Defendants are companies who provide and service insurance policies that offer coverage for "long-term care," which is a type of insurance typically

utilized by the elderly section of the population. Jean Andal[1] and Edna Wenzel both purchased long-term care policies covered by Ability. The policies essentially are similar and are commonly known as the "694 policy." Docket 112 at 43. Ability assumed all obligations and liabilities under each policy issued to plaintiffs, which included administration and payment or denial of claims.

Under the plan, the policyholder's medical care provider must show that he or she meets one of the policy's three benefit triggers to be eligible to receive benefits. These triggers are medical necessity, functional capacity, and cognitive function. The medical necessity and functional capacity qualifier triggers are at issue regarding both plaintiffs. The functional capacity qualifier is used to determine whether policyholders can manage, on their own, the basic routines and tasks of everyday life. These activities are referred to as Activities of Daily Living and consist of: dressing, eating, bathing, continence, transferring, and toileting. Plaintiffs' 694 policies grant benefits under the functional capacity qualifier if that policyholder needs assistance performing at least three of six Activities of Daily Living.

The other main benefit qualifier at issue in this case is medical necessity. Medical necessity provides for coverage under the policy if the insured's

---

[1] Mabel de Jonge originally was not a party to this lawsuit prior to plaintiffs' motion to consolidate cases in preparation for plaintiffs' motion for partial summary judgment.  Civ. 10-4088. Her case is not under consideration for this motion.

medical care provider certifies that the care prescribed "be consistent with accepted medical standards for treating the diagnosed condition" and cannot be omitted without affecting that condition. Docket 93-3 at Medico–0015. The final benefit trigger is cognitive impairment, which is invoked if the insured "require[s] supervision and direction because of cognitive impairment." *Id.*

**<u>Jean Andal:</u>**

In 2001, Andal first submitted her claim for benefits under the policy after she was hospitalized following surgery. Ability approved Andal's claim and she received benefits under the policy from 2001 to 2006. In 2006, Andal's assisted living facility reported to Ability that she was completely independent in five of six Activities of Daily Living, was mostly self-sufficient in taking her medications, and frequently left the facility to attend events in town and socialize. Based on that and other information from the facility, Medico determined Andal no longer met the benefit qualifiers required under her policy and terminated benefits on September 5, 2006.

Ability told Andal she could submit additional information that would prove coverage or ask further questions. Andal and those acting on her behalf did nothing to respond to the denial of coverage. Andal's condition declined in 2008, and she resubmitted her claim. Ability resumed paying benefits under the policy, which are still being paid at present. After litigation began and following the deposition of Andal's primary care physician, Dr. Syed Shah, Ability paid Andal's total claim for past benefits for the time period of 2006-08, plus interest, totaling more than $70,000.

3

**Edna Wenzel:**

In 2006, Wenzel spent some time in a nursing home following major surgery. Medico paid all benefits for that stay in the nursing home. Eventually, Wenzel moved to assisted living and requested benefits under her long-term care policy. Following review of Wenzel's records, Medico determined that Wenzel needed assistance with some of her Activities of Daily Living, but she did not meet the requirement of needing assistance with three Activities of Daily Living for functional capacity coverage. She also had no evidence of cognitive impairment. Medico denied coverage through a letter sent on March 30, 2007. Like Andal, defendants' representative invited Wenzel to provide additional information that would affect the claim or provide a reason for reconsideration. Neither Wenzel nor her son Larry Stolz, who was her power of attorney, provided any additional information or called and asked questions.

A relative of Wenzel called defendants on September 24, 2009, asking to review whether coverage now was available, and in October of 2009, Wenzel reapplied for benefits with Ability. Although Wenzel's health had deteriorated through a cancer diagnosis, she was still independent with most of her Activities of Daily Living, and coverage was denied. Stolz called a week later to provide updated information, but Wenzel's condition had not changed enough to affect coverage. On March 15, 2010, Wenzel's relative again requested that her claim be re-opened. Following the receipt of new records from Wenzel's facility, including a report from her primary physician, and after discussing

4

Wenzel's health with her son, defendants' adjuster determined that Wenzel qualified for functional capacity benefits.

Wenzel's primary physician, Dr. Richard Honke, sent a letter to Wenzel's attorney concluding that in his opinion, she did meet the benefit qualifiers in 2009. Ability did not receive this report immediately. Once Ability read Dr. Honke's report and confirmed his opinions through depositions, Ability paid all benefits and interest for coverage for 2009 and 2010. Ability maintains that Wenzel was not eligible for coverage from 2007 to 2009 and did not restore benefits for that time period. Wenzel died in September of 2010. Stolz maintains this action on behalf of her estate to recoup unpaid benefits and for bad faith.

Plaintiff Patricia Smit filed her complaint on May 5, 2010. Docket 1. The complaint was amended to add Andal and Wenzel as plaintiffs on June 1, 2010. Docket 9. Following the death of Wenzel on September 24, 2010, the court substituted Larry Stolz, executor of her estate, as the new party. Docket 41. Smit was dismissed on December 28, 2010. Both plaintiffs allege claims for breach of contract and bad faith against defendants.

## ANALYSIS

### I.  Motion to Bifurcate

Ability seeks bifurcation of the breach of contract claim from the bad faith claim at trial. Ability contends that bifurcation is appropriate because plaintiffs' breach of contract claim must be resolved before plaintiffs are entitled to recover damages for bad faith because a bad faith claim does not

accrue until the breach of contract is established. Ability also claims that bifurcation of issues at trial will promote judicial economy because the court could try the breach of contract issue first and then move forward with the bad faith claim only if it is necessary. Finally, Ability contends that it will be prejudiced and the jury confused if both claims are tried together.

Rule 42(b) of the Federal Rules of Civil Procedure states that "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims. When ordering a separate trial, the court must preserve any federal right to a jury trial." Fed. R. Civ. P. 42(b). The factor that controls the decision to bifurcate "is the interest of efficient judicial administration" instead of "the wishes of the parties." 9A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2388 (3d ed. 2008). "The piecemeal trial of separate issues in a single lawsuit or the repetitive trial of the same issue in severed claims is not to be the usual course." *Id.*

District courts have broad discretion when determining whether bifurcation is appropriate, but the court should consider "the preservation of constitutional rights, clarity, judicial economy, the likelihood of inconsistent results and possibilities for confusion." *O'Dell v. Hercules, Inc.*, 904 F.2d 1194, 1202 (8th Cir. 1990) (citing *Koch Fuels, Inc. v. Cargo of 13,000 Barrels of No. 2 Oil*, 704 F.2d 1038, 1042 (8th Cir. 1983)). "[P]iecemeal litigation is not . . . favored, and bifurcation is inappropriate in cases where the facts are so inextricably interwoven that [separation] is impossible or at least manifestly

6

unfair." *Issendorf v. Capitol Indemnity Corp.*, No. CIV. 93-1011 (D.S.D. May 3, 1994) (citing *Morse/Diesel, Inc. v. Fidelity & Deposit Co. of Maryland*, 763 F. Supp. 28 (S.D.N.Y. 1991) (internal quotations and citations omitted)).

Ability cites *Zuke v. Presentation Sisters, Inc.*, 589 N.W.2d 925, 930 (S.D. 1999), for the proposition that the breach of contract claim must precede bad faith determinations, but this court has previously stated that the South Dakota Supreme Court's holding in *Zuke* does not apply to issues of bifurcation. *Tripp v. Western Nat'l Mut. Ins. Co.*, No. CIV. 09-4023, 2010 WL 547181, *3 n.6 (D.S.D. Feb. 9, 2010). "While South Dakota law appears to require that a plaintiff be entitled to money under the contract before a plaintiff can recover under a bad faith claim, it does not follow that there must be two separate trials." *Id.* South Dakota law does not require bifurcation of breach of contract and bad faith claims.

While most of the denied benefits under the breach of contract claims have been paid, Wenzel still has a viable denied benefits claim for the period of January 17, 2007, through December 31, 2008. In *Hautala v. Progressive Direct Insurance Co.*, the court said it is an "inadvisable use of judicial resources to segregate certain factual issues, which may require the recalling of witnesses, for a separate hearing." No. CIV. 08-5003, 2010 WL 1812555, *13 (D.S.D. May 3, 2010) (citing *Transclean Corp. v. Bridgewood Servs., Inc.*, 101 F. Supp. 2d 788, 792-93 (D. Minn. 2000)). Plaintiffs have suggested numerous witnesses who will testify to both Wenzel's breach of contract claim and bad faith claim. Plaintiffs intend to call Dr. Honke, Mary Kummer, Larry Stolz, and defendants'

personnel who were personally involved in rejecting Wenzel's claim. Docket 66 at 3-4. The jury would benefit from hearing from these witnesses once and not duplicating efforts through separate trials. It is likely that other evidence, like expert testimony, for both claims and both plaintiffs will overlap, and bifurcation may hinder instead of promoting judicial economy. The facts also are interwoven in such a way that it would be difficult to separate them without causing confusion or prejudice.

Defendants claim they will be prejudiced because plaintiffs will introduce evidence of bad faith to the jury and no matter the jury instruction given, that "bell cannot be unrung." Docket 48 at 20. There is a presumption that juries not only carefully evaluate the evidence presented to them, but they can and do follow the instructions given to them. *Bjornestad v. Progressive Northern Ins. Co.*, No. CIV 08-4105, 2009 WL 2588286, *4 (D.S.D. Aug. 20, 2009) (citing *United States v. Delpit*, 94 F.3d 1134, 1144 (8th Cir. 1996)). Juries in South Dakota have successfully managed cases that include presentation of both breach of contract and bad faith claims. *Tripp*, 2010 WL 547181, *3 (citing *Athey v. Farmers Ins. Exchange*, 234 F.3d 357 (8th Cir. 2000)). In this case, the jury also can follow instructions and separate which evidence goes with each claim during trial. Further, defendants have not specified any other exact prejudice that they will suffer if bifurcation is not granted.

Defendants not only request bifurcation of each issue, but also each plaintiff,[2] which could amount to four different trials that would include the presentation of substantially similar evidence. Judicial economy does not support this result. For the reasons stated above, the motion to bifurcate the breach of contract claim from the bad faith claim at trial is denied.

## II.   Motion to Sever

Defendants claim that a motion to sever should be granted because plaintiffs were improperly joined, their claims do not arise out of the same transaction or occurrence, there are no common questions of law or fact, and that severance would promote judicial economy and avoid prejudice to defendants.

The Federal Rules of Civil Procedure provide:

> [a]ll persons may join in one action as plaintiffs if they assert any right to relief jointly, severally, or in the alternative in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all these persons will arise in the action . . . .

Fed. R. Civ. P. 20(a). Beyond Rule 20(a), both "Rule 20(b) and Rule 42(b) vest in the district court the discretion to order separate trials or make such other order as will prevent delay or prejudice." *Mosley v. Gen. Motors Corp.*, 497 F.2d 1330, 1332 (8th Cir. 1974). "The purpose of [Rule 20] is to promote trial convenience and expedite the final determination of disputes, thereby preventing multiple lawsuits." *Id.* (citing 7 Charles Alan Wright, Arthur R.

---

[2] Defendants' motion to sever is discussed in full below.

9

Miller, and Mary Kay Kane, *Federal Practice and Procedure* § 1652 at 265 (1972)).

The Supreme Court expressed its opinion on joinder in *United Mine Workers of America v. Gibbs*, stating "[u]nder the Rules, the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." 383 U.S. 715, 724 (1966). Permissive joinder, however, must meet two requirements to join parties: "(1) a right to relief must be asserted by, or against, each plaintiff or defendant relating to or arising out of the same transaction or occurrence, or series of transactions or occurrences; and (2) some question of law or fact common to all parties must arise in the action." *Mosley*, 497 F.2d at 1333.

Courts use a case-by-case analysis to determine whether the claims at issue constitute a transaction or series of transactions. *Id.* The Eighth Circuit defined "transaction" to be a word with a "flexible meaning." Thus, it could include "a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship." *Id.* (quoting *Moore v. New York Cotton Exchange*, 270 U.S. 593, 610 (1926)). Courts do not mandate "an absolute identity of all events." Rather, "all logically related events entitling a person to institute a legal action against another generally are regarded as comprising a transaction or occurrence." *Id.*

It is undisputed that both plaintiffs' claims are predicated on the same or similar long-term care insurance policy and both attempt to prove breach of

contract and bad faith by defendants. While each plaintiff would put on distinct evidence to prove his or her case, there are commonalities. Defendants sold nearly identical policies to each plaintiff. Defendants performed a similar service for plaintiffs based on those contracts. Plaintiffs relied on defendants and their agents to act reasonably based on the terms of their policies. Defendants denied plaintiffs' claims because of similar company policies, interpretations, or standards as both plaintiffs were denied benefits for not meeting the medical necessity and functional capacity qualifiers. Finally, defendants eventually determined that both plaintiffs were owed benefits that were initially denied, and the delay in payment or denial of benefits resulted in plaintiffs' claimed detriment. These claims are "logically related" and constitute a transaction or series of transactions or occurrences based on their "logical relationship" under the Eighth Circuit's broad interpretation of joinder. *Mosley*, 497 F.2d at 1333.

The second prong requires all parties to have the same questions of law or fact. Both plaintiffs need the court to interpret the contract to move forward with the breach of contract and bad faith claims. This is a common question of law. Likewise, both plaintiffs will need to show that defendants' delay in awarding benefits, or the complete denial of benefits, was done in bad faith. Both plaintiffs also need to show that defendants' internal policies for viewing and interpreting plan language amounts to bad faith. Beyond these questions of fact, there are numerous and varied facts common to all.

11

In this case, "[i]t is clear that common questions of fact and law will arise in Plaintiffs' claims against each defendant," and "proof of Plaintiffs' claims will overlap and separate trials would result in delay, inconvenience, and added expense to the parties and the courts." *See Culhane Commc'ns v. Fuller*, 489 F. Supp. 2d 959, 962 (D.S.D. 2007) (finding that joinder of multiple defendants in the action was appropriate because there was a sufficient connection between them, and all claims related to the sale or lease of a radio station, which defeated diversity jurisdiction and justified remand); *see also In re Prempro Products Liability Litigation*, 591 F.3d 613, 623 (8th Cir. 2010) (determining that the litigation would likely have common questions of law and fact because plaintiffs' claims against drug manufacturer "all relate to similar drugs and injuries and the manufacturers' knowledge of the risks of [those] drugs").

Defendants contend that this case can be likened to a series of home owner insurance cases that followed Hurricane Katrina in Louisiana and surrounding states.[3] These district courts reasoned that the only commonality

---

[3] *See Campo v. State Farm & Cas. Co.*, Civ. A. No. 06-2611, 2007 WL 2155792 (E.D. La. July 26, 2007); *Sucherman v. Metro. Prop. & Cas. Ins. Co.*, Civ. A. Nos. 06-8765, 05-6456, 2007 WL 1484067 (E.D. La. May 21, 2007) (finding that mere fact that all plaintiffs' damage was caused by one natural disaster was not enough to constitute the same "transactions or occurrences"); *Rohr v. Metro. Ins. & Cas. Co.*, Civ. A. No. 06-10511, 2007 WL 163037 (E.D. La. Jan. 17, 2007).

Many of these cases relied upon *Accardo v. Lafayette Insurance Co.*, Civ. A. No. 06-8568, 2007 WL 325368 (E.D. La. Jan. 30, 2007), which based much of its rationale and discussion on the concept of fraudulent or "procedural misjoinder," a theory that the Eighth Circuit Court of Appeals has yet to address. *Culhane Comm'cns v. Fuller*, 489 F. Supp. 2d 959, 962 n.2 (D.S.D. 2007). This issue need not be examined in this case because plaintiffs did not

between the plaintiffs' claims was "that their claims arise from damages caused by Hurricane Katrina and that each Plaintiff had a separate insurance policy with the Defendant." *Campo v. State Farm Fire & Cas. Co.*, Civ. A. No. 06-2611, 2007 WL 2155792, *3 (E.D. La. July 27, 2007). These cases are not binding on this court, and the facts are distinguishable.[4] Ability is not dealing with the fall-out after a natural disaster, but with breach of contract and bad faith claims within identical policies sold to similarly-situated plaintiffs and the denial or stoppage of benefits based on the same benefit qualifiers. There are also common elements of fact and law between plaintiffs beyond that Ability sold both plaintiffs insurance policies.

Finally, defendants claim severance promotes judicial economy and prevents prejudice. As already explained, while there may be an individual presentation of facts unique to each plaintiff, there are substantial similarities in the evidence that will be offered by both plaintiffs. Judicial economy would be frustrated if each individual claim were tried separately and witnesses, evidence, and argument repeated when it need not be so. Even if defendants

---

attempt to join a non-diverse party to defeat diversity.

[4] The court in *Campo* also used the five-factor test for severance that has been adopted in some jurisdictions. That test is: "(1) whether the claims arose out of the same transaction or occurrence; (2) whether the claims present common questions of law or fact; (3) whether settlement or judicial economy would be promoted; (4) whether prejudice would be averted by severance; and, (5) whether different witnesses and documentary proof are required for separate claims." *Campo*, 2007 WL 2155792, *2 (citing *McFarland v. State Farm Fire & Cas. Co.*, Civ. A. No. 06-466, 2006 WL 2577852, *1 (S.D. Miss. Sept. 6, 2006) (citing *Morris v. Northrop Grumman Corp.*, 37 F. Supp. 2d 556, 580 (E.D.N.Y. 1999))). This test is not binding on this court.

are burdened slightly by defending multiple claims, they have not expressed specific prejudice that outweighs the preference for joinder.

For those reasons, defendants' motion to sever individual plaintiffs Andal and Stolz is denied.

## CONCLUSION

Bifurcation is inappropriate in this case because the majority of evidence would overlap and separating the breach of contract claim from the bad faith claim is a waste of judicial economy. Severance is inappropriate because the claims arise from the same transaction or occurrence and common issues of law or fact exist such that joinder is preferred.

Accordingly, it is

ORDERED that defendants' motion for bifurcation (Docket 47) is denied.

IT IS FURTHER ORDERED that defendants' motion for severance (Docket 50) is denied.

Dated September 1, 2011.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
CHIEF JUDGE

14